**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:24-CR-00025-MEO-DCK**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| SONNY EDMOND LUCAS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant's Motion to Suppress (Doc. No. 57) and the United States' Response. Defendant argues that the September 30, 2023 search of his vehicle lacked probable cause. He therefore seeks to suppress the drugs, firearms, and other evidence seized during the search. The Court held a hearing on the motion on March 30, 2026, and issued an oral order denying the motion. This memorandum sets forth the Court's reasoning.

**I.     BACKGROUND**

The Court finds the following facts based on the evidence submitted, including body camera footage and officer testimony, at the hearing on March 30, 2026. While some argument at the hearing focused on Mr. Lucas being handcuffed and whether he resisted arrest, these facts are not germane to the motion in question. The Court focuses only on the facts relevant to the legality of the search of the automobile and the seizure of its contents.

On September 30, 2023, at approximately 9:35 p.m., officers with the Charlotte-Mecklenburg Police Department's Westover Division Crime Reduction Unit were surveilling the area of the Woodlawn Road / Yorkmont Road Corridor. They observed the Defendant, Mr. Lucas, operating a silver 2013 Mercedes Benz sedan and parked in a hotel parking lot. Officers were familiar with Mr. Lucas from a previous encounter. Upon observing Mr. Lucas exiting the parking

lot, one officer communicated with another officer via radio that she "had eyes on" Mr. Lucas and that he was leaving. Officers then followed Mr. Lucas and observed him park next to a gas pump and enter the gas station's convenience store. The doors and windows on the Mercedes were closed and tinted. There were other cars parked next to the other gas pumps at this time. While Mr. Lucas was still inside the convenience store, officers approached the vehicle Mr. Lucas had exited. Body camera footage and officer testimony at the hearing confirm the following:

- The officers observed in plain view, through the vehicle's window, what appeared to be a marijuana "blunt" on the vehicle's console.
- The officers observed in plain view, through the vehicle's window, a "hoodie" with an anti-theft device still attached to it.
- The officers noted the smell of marijuana emanating from the vehicle.

The officers waited several minutes for Mr. Lucas to exit the convenience store. When Mr. Lucas exited the store, officers informed him that they smelled an odor of marijuana coming from his car and that they had probable cause to search the vehicle, and they asked him to walk over to his car with them. Mr. Lucas appeared to remain on a mobile-phone conversation during this time, holding the phone to his ear while also responding to the officers' requests to search his vehicle. Mr. Lucas denied there was a marijuana smell coming from his vehicle, and he stated that the officers did not have permission to search the vehicle. The officers' observation of an odor of marijuana was not based on a determination by a drug-detection dog, nor did the officers attempt to utilize a drug-detection dog. Officers testified at the hearing that they knew the odor of marijuana from their training and experience, including hundreds of cases involving marijuana.

By this time, no other vehicles were at adjacent gas pumps, and the only vehicles parked near Mr. Lucas's vehicle were two law enforcement vehicles, one marked and one unmarked.

Upon approaching Mr. Lucas's vehicle with him, officers again noted the smell of marijuana coming from the car. One of the officers shined his flashlight into the vehicle to show the marijuana blunt to Mr. Lucas. Officers told Mr. Lucas that he could either give them the keys to open the car, or they could break the window, as they had probable cause to search the car. Eventually, officers decided to place Mr. Lucas in handcuffs for officer safety, considering the high-crime neighborhood and the fact that Mr. Lucas had remained on his mobile phone for some time, creating the risk that others may have been called to interrupt the officers' work. Mr. Lucas tensed up as officers were attempting to place handcuffs on him, and officers ultimately informed him that he was being placed under arrest for resisting arrest. Officers then took Mr. Lucas's car keys to open the vehicle without breaking his windows.

Upon searching the vehicle, officers seized the same marijuana blunt from the center console seen by the officers from outside the car. Additionally, in the center console, officers found bags containing cocaine and marijuana and $2,908 in cash. In the back seat of the vehicle, officers found a Louis Vuitton bag containing bags of cocaine, fentanyl, and methamphetamine. Officers found a digital scale in the outer pocket of the bag. Multiple firearms were also found – one in the back seat, one in a safe behind the driver's seat, and two in a "London Fog" bag in the trunk. Officers found a small bag in the trunk with six boxes of ammunition containing various types of 9mm ammunition. Inside that same bag, officers found a black kydex holster and pill bottles with Defendant's name.

## II. DISCUSSION

"[W]here a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant." *Riley v. California*, 573 U.S. 373, 382 (2014) (quoting *Vernonia School Dist. 47J v. Acton*, 515

U.S. 646, 653 (1995). One exception involves the search of an automobile. "Police officers do not need a warrant to search an automobile if they have probable cause to believe it contains evidence of criminal activity." *United States v. Patiutka*, 804 F.3d 684, 690 (4th Cir. 2015) (citing *United States v. Ross*, 456 U.S. 798, 809 (1982)). "[P]robable cause turns on a 'totality-of-the-circumstances analysis' and requires 'a practical, common-sense decision whether ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Gondres-Medrano*, 3 F.4th 708, 714 (4th Cir. 2021) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "[O]nce police have probable cause, they may search 'every part of the vehicle and its contents that may conceal the object of the search.'" *United States v. Kelly*, 592 F.3d 586, 590 (4th Cir. 2010) (quoting *Ross*, 456 U.S. at 825). The plain-view observation of drugs and other contraband in an automobile provides probable cause to search the vehicle. *See, e.g.*, *United States v. Chulengarian*, 538 F.2d 553, 554 (4th Cir. 1976) (marijuana and drug paraphernalia in plain view); *United States v. Johnson*, 599 F.3d 339, 347 (4th Cir. 2010) (heroin-containing capsules in plain view that matched those found on defendant's person).

Defendant argues the police lacked probable cause to search his vehicle. The totality of the circumstances dictates otherwise. First, Defendant was parked at a gas station. In such a public location, he had no expectation of privacy as to the view of his car's interior through its windows. Therefore, when officers observed in plain view what appeared to be a marijuana "blunt" and a hooded sweatshirt with the anti-theft security tag still attached, these facts created a fair probability that contraband and evidence of criminal activity were in the vehicle.[1] If it were the hoodie alone, or perhaps only the partially burned rolled "blunt", Defendant might have a better argument for an

---

[1] Testimony from an officer at the hearing on Defendant's Motion to Suppress held on March 30, 2026 also noted a piece of paper currency that was folded, indicating based on his law enforcement experience that it may be used to store or consume illegal drugs. The Court need not consider this evidence in reaching its determination of this issue.

4

innocent explanation and the absence of probable cause. However, both items that indicated apparent criminal activity were in plain view, and looking at the totality of the circumstances, officers had probable cause to search the vehicle.

Moreover, officers observed the odor of marijuana coming from the vehicle, including when Mr. Lucas's car was the only non-police vehicle within close range of the officers. This observation was captured on the body-worn cameras of the officers real-time. This fact alone provided probable cause for officers to search Defendant's vehicle. *See United States v. Humphries*, 372 F.3d. 653, 658 (4th Cir. 2004); *see also United States v. Scheetz*, 293 F.3d 175, 184 (4th Cir. 2002). It also supports the probable cause that independently existed based on the items identified in plain view through the window of the vehicle.

Therefore, considering all the facts available to the officers during the incident in question, including two items of apparent contraband in plain view and the odor of marijuana, the Court finds the officers had probable cause to search Defendant's vehicle.

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Suppress (Doc. No. 57) is **DENIED**.

**SO ORDERED.**

Signed: March 31, 2026

Matthew E. Orso
United States District Judge